# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| **OSCAR MORGAN III,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No.: 4:25-cv-00206-P-BJ** |
| | § | |
| **TOPGOLF INTERNATIONAL, INC.; TOP GOLF USA, INC.; TOPGOLF USA FT. WORTH, LLC; and JANE DOE, AS UNNAMED EMPLOYEE,** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| **Defendants** | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Oscar Morgan III, Pro Se
6061 Brandon Run
Lakewood, FL 34211
205-266-0079
oscaratlaw@aol.com

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION AND FACTUAL BACKGROUND.......................................................... 1

II.  LEGAL STANDARD ............................................................................................................ 2

III. ARGUMENT AND AUTHORITIES .................................................................................... 3

A. Counts I & II – Title III of the ADA (Standing and Injunctive Relief) ...................................... 3

    i.    Plaintiff Alleges a Concrete, Particularized, and Past Injury ........................................... 4

    ii.   Plaintiff Alleges a Real and Immediate Threat of Future Harm ...................................... 4

    iii.  Deterrence from Returning Due to Ongoing Discrimination Supports Standing ........... 5

B. Defendants' Standing Challenge Improperly Relies on Disputed Facts Outside the Pleadings. 6

    i.    A Rule 12 Motion Requires Acceptance of Plaintiff's Allegations as True ................... 6

    ii.   The Alleged Discriminatory Enforcement Is Supported by the Policy Document Itself .. 8

    iii.  The Court Cannot Weigh Competing Interpretations of the Facts at This Stage ........... 10

C. Plaintiff Alleges a Specific Facility and Longstanding Topgolf Patronage .............................. 11

    i.    Plaintiff Alleges a Specific Facility Plus Longstanding Topgolf Patronage ................... 11

    ii.   Plaintiff Has Alleged a Plausible and Credible Intent to Return ..................................... 11

    iii.  Courts Have Recognized That Deterrence Based on Past Discrimination Supports
    Standing ........................................................................................................................... 12

D. Injunctive Relief Is the Appropriate Remedy Under Title III Based on Ongoing Harm.......... 13

E. Count III – Race Discrimination Under §1981 ........................................................................ 14

F. Count IV – Tortious Interference with Prospective Business Relationship ............................. 17

IV. CONCLUSION AND PRAYER FOR RELIEF.................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                          **Page(s)**

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)……………………………………………………..….. 3

Bell Atl. Corp. v. Twombly,
    550 U.S. 544 (2007)…………………………………………………….3

Bradford v. Vento,
    48 S.W.3d 749 (Tex. 2001)……………………………………..………… 19

Byers v. Dallas Morning News, Inc.,
    209 F.3d 419 (5th Cir. 2000)……………..…………………………..……. 15, 16

Coinmach Corp. v. Aspenwood Apartment Corp.,
    417 S.W.3d 909 (Tex. 2013)..................................................................... 17, 18, 19

Deutsch v. Travis Cty. Shoe Hosp., Inc.,
    721 F. App'x 336 (5th Cir. 2018)……………………..……………..…….. 11

Frame v. City of Arlington,
    657 F.3d 215 (5th Cir. 2011) (en banc)………………………………….. passim

Hale v. King,
    642 F.3d 492 (5th Cir. 2011)……………………………………….….. 10

Hernandez v. Baylor Univ.,
    274 F. Supp. 3d 602 (W.D. Tex. 2017)……………………………….….. 3

Hunter v. Branch Banking & Tr. Co.,
    No. 3:12-CV-2437-D, 2013 WL 607151 (N.D. Tex. Feb. 19, 2013)………………... 5, 12

Johnson v. Gambrinus Co./Spoetzl Brewery,
    116 F.3d 1052 (5th Cir. 1997)……………………………………….…… 10

Jones v. Robinson Prop. Group, L.P.,
    427 F.3d 987 (5th Cir. 2005)……………………………….…………… 15, 16

Paterson v. Weinberger,
    644 F.2d 521 (5th Cir. 1981)………………………………………….….. 2

Pickern v. Holiday Quality Foods, Inc.,
    293 F.3d 1133 (9th Cir. 2002)……………………………………...…….. 5

PGA Tour, Inc. v. Martin,
    532 U.S. 661 (2001)……………………………………………………...…………10

Turner v. Pleasant,
    663 F.3d 770 (5th Cir. 2011)………………………………………..……….passim

Wal-Mart Stores, Inc. v. Sturges,
    52 S.W.3d 711 (Tex. 2001)……………………………………….…..………..17

Wheeler v. BL Dev. Corp.,
    415 F.3d 399 (5th Cir. 2005)…………………………………...…………… 15, 16

**Statutes**

Americans with Disabilities Act Title III, 42 U.S.C. § 12182(a)......…………………………7, 10

42 U.S.C. § 2000a-3(a) ………………………………………………………….13

42 U.S.C. § 1981……………………………………………………… passim

**Other Authorities**

Fed. R. Civ. P. 12(b)(1) ……………………………………………………… 2

Fed. R. Civ. P. 12(b)(6) ………………………………………………………3, 6, 19, 20

28 C.F.R. § 36.302(c)(1) …………………………………………………..… 10

28 C.F.R. pt. 36, app. B ……………………………………………….…………10

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Plaintiff, OSCAR MORGAN III, respectfully submits this Response in Opposition to the Motion to Dismiss filed by TOPGOLF INTERNATIONAL, INC.; TOPGOLF USA, INC.; TOPGOLF USA FORT WORTH, LLC (collectively, "Topgolf") and JANE DOE (together, "Defendants"), and states as follows:

## I.     INTRODUCTION AND FACTUAL BACKGROUND

This case arises under Title III of the Americans with Disabilities Act ("ADA"), based on discriminatory treatment Plaintiff experienced at the Topgolf facility in Fort Worth, Texas on July 19, 2023. Plaintiff is a visibly disabled U.S. Army veteran, whose appearance and physical condition visibly identify him as a person with a disability under the ADA. On the date of the incident, Plaintiff visited the Fort Worth Topgolf location for a scheduled business lunch with a prospective client.

During the visit, Plaintiff was initially served without incident. However, after food and drinks were ordered, the server returned and abruptly demanded that Plaintiff provide a credit card. The server's request was made in a manner that was public, demeaning, and out of step with how other, similarly situated patrons were being treated. Plaintiff observed that other nearby guests were not asked to provide their credit cards, and no explanation was offered as to why he was singled out. The experience caused Plaintiff embarrassment, humiliation, and distress, particularly given the visible nature of his disability.

Plaintiff later learned of Topgolf's internal "Storing a Credit Card" procedure through Defendants' written response to his demand (SAC Ex. 2). As described in Exhibit 2, staff are instructed to store a credit card, and management monitors compliance through spot checks. Plaintiff alleges the policy is applied selectively, including by interrupting him mid-service while

1

nearby patrons were not asked, creating a continuing risk of unequal treatment (SAC ¶¶ 16–24, 28–31; SAC Ex. 2 at 2–4).

Because the policy leaves timing and execution to employee discretion and relies on managerial audits rather than uniform enforcement, it is susceptible to inconsistent application. One guest may be asked at the start of service, another may never be asked, and still others, as alleged here, may be interrupted mid-meal while nearby patrons are left undisturbed (SAC ¶¶ 20–25).

Plaintiff has alleged that he now avoids the Fort Worth Topgolf facility out of fear of being subjected to the same unequal treatment, and that this fear is grounded in the continued enforcement of the same policy that caused the original harm. Nonetheless, Plaintiff affirms his intent to return to the facility in the future, should the discriminatory conditions be remedied.

Defendants' Motion to Dismiss argues that Plaintiff lacks standing to pursue injunctive relief under Title III. However, as shown below, Plaintiff has sufficiently alleged: (1) a past injury-in-fact; (2) a credible and non-speculative intent to return to the place of public accommodation; and (3) a continued policy or practice that gives rise to a real and immediate threat of future harm. These allegations, accepted as true at the motion to dismiss stage, are more than adequate to establish standing and to allow Plaintiff's claims to proceed.

## II.    LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject-matter jurisdiction, including whether the plaintiff has constitutional standing. When evaluating a Rule 12(b)(1) motion that presents a facial challenge to standing, the Court must accept all well-pleaded allegations in the complaint as true and determine whether they are legally sufficient to establish jurisdiction. See *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981);

*Hernandez v. Baylor Univ.,* 274 F. Supp. 3d 602, 607–09 (W.D. Tex. 2017). The Court may not resolve factual disputes or make credibility determinations at this stage.

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

At the pleadings stage, the plaintiff is not required to prove his claims, he must allege facts that, accepted as true, state a plausible claim to relief. This standard is particularly important in civil rights cases, where early dismissal may prematurely extinguish valid claims based on unresolved factual issues.

Further, Defendants' references to unrelated lawsuits and characterizations of Plaintiff are immaterial to a Rule 12 motion and cannot negate well-pleaded facts in the SAC. The Court's review is confined to the pleadings and properly attached exhibits; credibility determinations are improper at this stage.

## III.    ARGUMENT AND AUTHORITIES

### A.    Counts I & II – Title III of the ADA (Standing and Injunctive Relief)

Defendants argue that Plaintiff lacks standing because he has not demonstrated a "real or immediate threat" of future harm under Title III of the Americans with Disabilities Act ("ADA"). This misstates the applicable legal standard and ignores well-pleaded factual allegations in Plaintiff's Second Amended Complaint ("SAC"), all of which must be accepted as true at this stage.

Plaintiff is a visibly disabled U.S. Army veteran who has long patronized Topgolf and visited the Fort Worth location for the incident at issue. He alleges long-term patronage of Topgolf, a specific visit to the Fort Worth facility on July 19, 2023, and frequent travel to Texas with a stated intent to return to that location. (SAC ¶¶ 13–16, 35–36.). On July 19, 2023, during a busy period, Plaintiff was publicly singled out by a server who demanded a credit card as a condition of continued service, while other nearby guests were not subject to the same demand. (SAC ¶¶ 20–25). Plaintiff alleges that the experience was humiliating, demeaning, and linked to his visible disability.

Plaintiff's allegations, accepted as true, satisfy the elements of constitutional and statutory standing under the ADA.

### i.      Plaintiff Alleges a Concrete, Particularized, and Past Injury

Plaintiff was subjected to discriminatory treatment during a visit to public accommodation. The SAC alleges that he was treated differently than other similarly situated patrons based on his appearance and disability. (SAC ¶¶ 16–24). Courts have consistently held that unequal treatment based on disability constitutes a cognizable injury under the ADA. See *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011) (en banc).

### ii.      Plaintiff Alleges a Real and Immediate Threat of Future Harm

Defendants contend that "Plaintiff does not allege that a threat of present or future harm exists." That is simply incorrect. Plaintiff specifically alleges that Defendants' discriminatory credit-card policy remains in effect, is enforced in a discretionary manner, and continues to deter him from returning to the Fort Worth facility (SAC ¶¶ 32–36). The fact that Plaintiff has not yet returned is not evidence of no injury; it is direct evidence of the ongoing harm. The humiliation and reputational damage from his first visit, coupled with Defendants' refusal to remedy or retract

4

the challenged policy, reasonably deter Plaintiff from returning. Courts recognize that deterrence itself constitutes a present injury under Title III. See *Frame v. City of Arlington,* 657 F.3d 215, 236–37 (5th Cir. 2011) (en banc); *Pickern v. Holiday Quality Foods,* 293 F.3d 1133, 1137–38 (9th Cir. 2002). The ADA does not require Plaintiff to subject himself to further humiliation before seeking relief. Because the challenged policy remains active and unremedied, the threat of repeated injury is both real and immediate, satisfying Article III standing.

The SAC makes clear that the policy underlying the discrimination, Topgolf's "Storing a Credit Card" policy,  remains in effect and continues to be enforced through internal, discretionary practices. (SAC ¶¶ 32–36; SAC Ex. 2 at pp. 2–4). Plaintiff alleges there was no posted signage or notice about any credit-card requirement. These facts support the inference that Plaintiff, if he returns, is reasonably likely to experience the same discriminatory treatment again.

Plaintiff's intent to return is credible and specific: he identifies the exact facility, states a history of prior visits, and asserts a desire to return but for the discriminatory conditions. (SAC ¶¶ 33–36). This satisfies the "real and immediate threat" standard required for standing in ADA cases. See *Hunter v. Branch Banking & Tr. Co.*, No. 3:12-CV-2437-D, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013).

### iii.     Deterrence from Returning Due to Ongoing Discrimination Supports Standing

Plaintiff further alleges that the discriminatory treatment has caused him to avoid returning to the facility, out of fear that he will be publicly humiliated again. This deterrent effect is sufficient to establish standing under Title III. Courts have recognized that a plaintiff who avoids public accommodation due to a discriminatory policy may assert standing, even without a confirmed return date. See *Pickern v. Holiday Quality Foods*, 293 F.3d 1133, 1137–38 (9th Cir. 2002) ("[T]he

threat of repeated injury ... is real and immediate so long as the discriminatory policy remains in effect.").

Taken together, these allegations are more than sufficient to confer standing under both Article III and Title III of the ADA. Because Plaintiff has alleged a past injury, a policy that remains in force, and a credible risk of future harm, Defendants' motion to dismiss on standing grounds must be denied.

### B.    Defendants' Standing Challenge Improperly Relies on Disputed Facts Outside the Pleadings

Defendants seek dismissal by asserting that Plaintiff was subject only to Topgolf's standard credit-card storage policy, which they characterize as lawful and uniformly applied, and that Ms. Doe's conduct reflected nothing more than enforcement of that policy. (Def. Mot. at 2, 12–13). This framing misapplies the Rule 12 pleading standard and improperly asks the Court to resolve factual disputes about how the policy operates and whether it was enforced in a discriminatory manner at this early stage.

#### i.    A Rule 12 Motion Requires Acceptance of Plaintiff's Allegations as True

Under well-settled Fifth Circuit precedent, courts evaluating a motion under Rule 12(b)(1) or 12(b)(6) must accept all well-pleaded facts as true and construe them in the light most favorable to the plaintiff. See *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011). This includes allegations regarding the manner in which policies were applied and the context of the alleged discrimination.

Here, Plaintiff alleges that on July 19, 2023, he was publicly singled out by a server and asked to provide a credit card, while similarly situated, non-disabled patrons were not. (SAC ¶¶ 18–24). This alleged conduct was not tied to any point-of-sale automation or uniform protocol, but rather to the discretionary judgment of the server, further reinforcing Plaintiff's contention that the policy was selectively applied.

6

Defendants argue that Plaintiff has not alleged denial of "access" to Topgolf's facilities based on his disability, and that Ms. Doe may not have been "aware" of Plaintiff's condition. This misstates both Plaintiff's allegations and the law.

First, Title III is not limited to physical barriers like steps or ramps. By its plain terms, it provides:

> **"No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."**

42 U.S.C. § 12182(a).

Plaintiff alleges that he was publicly singled out for pre-payment while similarly situated, non-disabled patrons were not, thereby denying him equal enjoyment of the restaurant's services (SAC ¶¶ 16–24, 40–42). That allegation alone states an ADA claim.

Second, Plaintiff specifically alleged that his disability is open and apparent: he walks with a restricted gait and has visible mobility limitations that others readily perceive (SAC ¶ 12). At the pleading stage, these facts support a plausible inference that Ms. Doe either knew or reasonably should have known of Plaintiff's disability. *Frame v. City of Arlington*, 657 F.3d 215, 236–37 (5th Cir. 2011) (en banc). The ADA does not require Plaintiff to allege what Ms. Doe subjectively thought; that is precisely the type of factual issue reserved for discovery, including deposition testimony of Defendants' employees.[1]

---

[1] Defendants' claim that Plaintiff did not allege denial of access or awareness of his disability misstates the pleadings. The SAC expressly alleges Plaintiff's restricted gait and visible mobility limitations are "readily apparent" (SAC ¶ 12), supporting a plausible inference that Ms. Doe knew or should have known of his disability. Whether she subjectively recognized this is a factual issue for discovery, not dismissal. See *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011)

Accordingly, Defendants' contention that Plaintiff failed to allege awareness of his disability asks the Court to resolve a disputed fact against Plaintiff, which is impermissible at this stage. See *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011).

Defendants also suggest that Plaintiff's pre-suit correspondence did not discuss disability. But pre-suit letters are not required to preview every factual allegation later pleaded, and Rule 8 looks to the operative complaint. At this stage, the SAC's well-pleaded facts control; any tension with pre-suit communications presents, at most, a factual dispute for discovery—not a basis for dismissal.

### ii.  The Alleged Discriminatory Enforcement Is Supported by the Policy Document Itself

Defendants assert that Plaintiff "acknowledges" Topgolf's request was consistent with its written policies and procedures for storing credit cards. (Def. Mot. at p. 2). They further claim that Plaintiff acknowledged Topgolf's policies require employees to store at least one credit card per table and require managers to perform audits throughout the shift. (Def. Mot. at pp. 9–10). Plaintiff has conceded no such thing.

Exhibit 2 to the SAC is Defendants' own written response to Plaintiff's demand letter, attached solely to show how Defendants themselves described the policy and how it purports to operate. Its inclusion does not admit the policy's accuracy, consistency, or neutrality. To the contrary, Plaintiff specifically alleges that the policy, as drafted and enforced, is discretionary, inconsistently applied, and subject to selective use against certain patrons. (SAC ¶¶ 28–31; SAC Ex. 2 at pp. 2–4). Courts consistently hold that attaching a defendant's policy documents to a complaint does not transform them into the plaintiff's admissions of truth or consistent enforcement.

Indeed, Defendants' own materials confirm the problem. The "Storing a Credit Card" policy (SAC Ex. 2 at pp. 2–4) does not mandate that every guest submit a card or dictate when a card must be obtained. Instead, it: (a) encourages servers to capture one card per bay, (b) leaves execution and timing to the discretion of individual employees, and (c) relies on spot audits by managers rather than uniform enforcement. This very discretion enables unequal application, the core of Plaintiff's allegation. One patron may never be asked for a card, another may be asked at the outset, while Plaintiff, as alleged, was publicly interrupted mid-service in front of his client and threatened with removal, while nearby patrons were not.

Defendants also mischaracterize Plaintiff's claim as if it were about refusing to pay or seeking free goods. They state:

> **"…a Topgolf employee told Plaintiff he would have to leave the establishment if he refused to pay for his and his client's meals, not because of his alleged disability. Asking a patron to leave a place of business when the patron does not have money to purchase goods is not sufficient to assert a Title III discrimination claim under the ADA. Indeed, Title III of the ADA does not require Topgolf to provide disabled persons with goods free-of-charge, as Topgolf does not ordinarily provide free goods to customers." (Def. Mot. at 12).**

That framing is inaccurate. Plaintiff does not allege inability or refusal to pay. Rather, he alleges that he was singled out and publicly interrupted mid-service, threatened with removal, and forced to provide a card, while nearby, similarly situated non-disabled patrons were not subjected to the same demand. (SAC ¶¶ 16–24). Nothing in the SAC suggests Plaintiff lacked funds. The discrimination alleged is unequal treatment in the *timing and manner* of enforcement, not the fact of payment.

Title III protects the right to the "full and equal enjoyment" of services, which includes being served on equal terms without selective, mid-service interruption and public humiliation. 42

9

U.S.C. § 12182(a); SAC ¶¶ 40–42. Whether Defendants' credit-card policy was applied neutrally or discriminatorily is a factual question for discovery, not grounds for dismissal.

### iii.    The Court Cannot Weigh Competing Interpretations of the Facts at This Stage

Defendants want the Court to resolve a factual dispute, whether their credit-card policy was enforced neutrally and uniformly. That's not a Rule 12 question. At this stage, the Court accepts well-pleaded facts as true and draws all reasonable inferences for the plaintiff; disputes over how a policy was applied are for discovery. *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011); *Hale v. King*, 642 F.3d 492, 498–99 (5th Cir. 2011).

And Title III liability is not limited to bricks-and-mortar barriers; policies and practices that deny equal enjoyment are actionable and must be reasonably modified unless the defendant proves a fundamental alteration. *Johnson v. Gambrinus Co./Spoetzl Brewery*, 116 F.3d 1052, 1059–61 (5th Cir. 1997) (adopting DOJ's rule that public accommodations must "permit the use of a service animal" and endorsing "the broadest feasible access" standard), citing 28 C.F.R. § 36.302(c)(1) & pt. 36 app. B; see also *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674–83 (2001) (policy-based Title III claim; reasonable modification required absent fundamental alteration).

Plaintiff's allegations, taken as true, plausibly establish that the policy was not uniformly applied, and that it was used in a way that discriminated against him based on his disability. These facts are more than sufficient to overcome a facial challenge to standing at the motion to dismiss phase. See *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011).

Accordingly, Defendants' attempt to substitute their own narrative for the well-pleaded allegations in the Complaint must be rejected at this stage. The motion to dismiss should be denied.

### C.  Plaintiff Alleges a Specific Facility and Longstanding Topgolf Patronage

Defendants' reliance on *Deutsch v. Travis Cty. Shoe Hosp., Inc.,* 721 F. App'x 336 (5th Cir. 2018), is misplaced. In Deutsch, the plaintiff failed to allege any history of patronage, did not identify a specific location he intended to return to, and offered only a vague, hypothetical desire to revisit "someday." By contrast, Plaintiff here identifies the exact Topgolf location where the discriminatory incident occurred (SAC ¶16), alleges he communicated with management after the incident regarding the discriminatory conduct (SAC ¶¶33–34), and pleads that he genuinely desires and intends to return but is deterred because the discriminatory policy remains unremedied (SAC ¶¶35–36). These allegations are far more concrete than those in Deutsch and are sufficient to establish standing under Title III.

### i.  Plaintiff Alleges a Specific Facility Plus Longstanding Topgolf Patronage

Unlike in Deutsch, Plaintiff identifies the specific Fort Worth Topgolf where the incident occurred (SAC ¶¶ 14–17) and pleads longstanding Topgolf patronage (SAC ¶ 13), frequent travel to Texas, and a stated intent to return to the Fort Worth location (SAC ¶¶ 35–36). These allegations demonstrate a concrete connection to the facility and an expressed intent to return, not a vague or speculative "someday" desire. These facts demonstrate an ongoing patronage relationship, not a one-time occurrence or casual drop-in.

### ii.  Plaintiff Has Alleged a Plausible and Credible Intent to Return

Plaintiff clearly states that he intends to return to the Fort Worth Topgolf facility but has been deterred due to the risk of repeated discriminatory treatment. His deterrence is based on a continuing policy that remains in effect: Topgolf's "Storing a Credit Card" procedure, which Plaintiff alleges is selectively and discriminatorily enforced. (SAC ¶¶ 31–36; SAC Ex. 2). Unlike the vague "some day" intent in *Deutsch*, Plaintiff's asserted intent to return is: (a) Tied to a specific

location; (b) Grounded in an actual history of visits; (c) Informed by prior experience of discrimination; and (d) Deterrent-driven, not speculative.

The continued existence of the challenged policy, combined with Plaintiff's credible intention to revisit the facility, is sufficient to satisfy standing under ADA jurisprudence.

### iii.        Courts Have Recognized That Deterrence Based on Past Discrimination Supports Standing

Multiple courts have held that a plaintiff may establish standing under Title III where they plausibly allege that they would return to a location but for a discriminatory condition or policy. See *Hunter v. Branch Banking & Tr. Co.*, No. 3:12-CV-2437-D, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (recognizing that deterrence from returning can establish standing, though finding the plaintiff's allegations insufficient in that case). Similarly, in *Frame v. City of Arlington,* 657 F.3d 215, 236–37 (5th Cir. 2011) (en banc)., the Fifth Circuit confirmed that a policy or practice that deters access to a public accommodation can establish a real and immediate threat of future harm.

Here, Plaintiff has alleged a credible and specific intention to return to Topgolf but has reasonably chosen not to, based on a prior experience of public humiliation tied to a policy that remains in place (SAC ¶¶ 35–36). This is precisely the type of allegation that supports standing at the pleading stage. Plaintiff's identification of a specific facility, his follow-up communications with management, and his credible fear of renewed discrimination provide a factual basis far stronger than the deficient allegations in *Deutsch*. Taken as true, these allegations are more than sufficient to overcome the motion to dismiss.

12

**D.** **Injunctive Relief Is the Appropriate Remedy Under Title III Based on Ongoing Harm**

Defendants contend Plaintiff's Title III claim fails because compensatory damages are unavailable, but Plaintiff does not seek damages under Title III; he seeks declaratory and prospective injunctive relief, the precise remedy Congress authorized. See 42 U.S.C. § 12188(a)(1). Their argument attacks a claim he did not bring and should be rejected. This contention distorts the actual pleadings and improperly seeks dismissal of a claim Plaintiff has not brought. Defendants' attempt to reframe Plaintiff's claims into something they are not only misstates the record, but also underscores the weakness of their motion.

**i.** **Title III Authorizes Prospective Equitable Relief, Not Damages**

Title III of the ADA expressly authorizes "preventive relief, including an application for a permanent or temporary injunction." 42 U.S.C. § 12188(a)(1). This provision incorporates the remedies available under 42 U.S.C. § 2000a-3(a) and makes clear that injunctive relief, not damages, is the appropriate and primary remedy for violations by private entities.

The Fifth Circuit has confirmed that injunctive relief is the proper remedy where a policy or practice creates a likelihood of ongoing harm. In *Frame v. City of Arlington*, 657 F.3d 215, 237 (5th Cir. 2011) (en banc), the court emphasized that Title III exists to prevent future barriers to access, and that prospective equitable relief is the mechanism Congress provided to achieve that goal.

**ii.** **Plaintiff Has Specifically Requested Relief Authorized by Statute**

Plaintiff's Second Amended Complaint requests exactly the type of prospective relief Congress intended: an injunction prohibiting the continued enforcement of a discretionary credit-card policy that, as alleged, was applied in a discriminatory and public manner to a visibly disabled patron. (SAC ¶¶ 16–24, 28–36; SAC Ex. 2 at pp. 2-4).

13

Plaintiff alleges that this policy remains in effect, that it grants servers and managers unfettered discretion in its application, and that it is enforced without consistent training or uniform standards. The ongoing existence of such a policy, coupled with allegations of its selective and unequal application, presents a live controversy and a continuing threat of discrimination that warrants equitable intervention.

### iii.    Plaintiff's Request for Injunctive Relief Is Legally Proper and Factually Supported

Defendants do not dispute that injunctive relief is available under Title III. Instead, they argue that Plaintiff lacks standing to pursue it. That argument fails. As set forth above, Plaintiff has alleged: (a) a concrete past injury from discriminatory treatment; (b) the existence of a discretionary policy that remains in force; and (c) a credible and specific fear of being subjected to the same unequal treatment if he returns.

These allegations, which must be taken as true at the pleading stage, are more than sufficient to entitle Plaintiff to seek the equitable relief that Title III was designed to provide.

Moreover, the fact that Plaintiff does not seek monetary relief under Title III underscores the bona fides of his claim. His purpose is not financial gain but to ensure equal treatment going forward. This request aligns precisely with the ADA's remedial purpose of preventing ongoing discrimination and guaranteeing access, not simply compensating for past harm.

Finally, to the extent Defendants raise attorneys' fees under Title III, Plaintiff does not seek damages under Title III. The issue is irrelevant to dismissal and, in any event, premature.

### E.    Count III – Race Discrimination Under §1981

Plaintiff specifically alleges he is African American (SAC ¶ 58, incorporated into Count III) and that he was singled out and threatened with removal unless he produced a credit card while nearby non-Black patrons were not subjected to the same demand. (SAC ¶¶ 20–24, 37). These

14

allegations, taken as true, are more than sufficient at the pleading stage to permit an inference of racial animus.

Defendants attempt to minimize these allegations in two ways, neither of which is persuasive.

First, Defendants argue Plaintiff "does not allege that he observed Ms. Doe taking other customers' … food orders or bringing those same customers food without requiring that they pre-pay…" (Def. Mot. at 13–14). That mischaracterizes the claim. Plaintiff need not allege that Ms. Doe personally waited on every nearby table. It is sufficient at the pleading stage that he alleges similarly situated non-Black patrons in his vicinity were not subjected to the same credit-card demand, and that the policy's discretionary enforcement enabled selective treatment. (SAC ¶¶ 20–24, 31–37; SAC Ex. 2). At the pleading stage, those allegations are taken as true and suffice to establish disparate treatment. See *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (recognizing that both direct and circumstantial evidence may establish §1981 discrimination); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (prima facie case of race discrimination may be shown by circumstantial evidence); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005) (discriminatory intent may be inferred from circumstantial evidence of disparate treatment). At the pleading stage, Plaintiff need not produce direct racial epithets or 'smoking gun' admissions. Circumstantial allegations of disparate treatment are sufficient. See *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (prima facie case may be shown through circumstantial evidence). Plaintiff's detailed allegations of being singled out, threatened with removal, and treated differently than nearby non-Black patrons (SAC ¶¶ 16–24, 37) provide far more than conclusory labels; they state a plausible inference of discrimination under §1981.

15

Second, by Defendants' own framing, the request for a card came only "after Plaintiff and his client placed their food orders," and Ms. Doe stated he would have to leave if he refused (Def. Mot. at 12). But the demand and threat were directed at Plaintiff personally and interrupted his own service in front of his prospective client. Plaintiff, not the guest, was singled out, embarrassed, and threatened with removal. The alleged disparate treatment concerns Plaintiff, not his guest. (SAC ¶¶ 20–27). Whether the credit-card policy was uniformly applied is a factual issue for discovery, not a Rule 12 motion.

The Fifth Circuit has long recognized that discriminatory intent need not be proven by direct statements of racial animus; it may be inferred from the context and circumstances of disparate treatment. *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000) (confirming that intent may be shown through circumstantial evidence under both Title VII and § 1981); *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (same). Here, Plaintiff's allegations, as a Black patron, that he was subjected to a unique and humiliating demand not imposed on similarly situated non-Black patrons, and that the demand carried an express threat of removal, plausibly support an inference of race-based discrimination. Whether Defendants can later supply a neutral explanation is a matter for discovery, not resolution on a Rule 12 motion.

Taken as true, Plaintiff's allegations satisfy all three elements of a § 1981 claim: (1) he is a member of a protected class; (2) he sought to make and enforce a contract for food and services; and (3) he was denied the right to contract on equal terms due to race. The motion to dismiss should therefore be denied as to Count III.

16

**F.**     **Count IV – Tortious Interference with Prospective Business Relationship**

Defendants also seek dismissal of Count IV, contending that Plaintiff's allegations do not establish a probable business relationship, intentional interference, independently tortious conduct, or proximate cause. These arguments are misplaced. Accepting the well-pleaded allegations of the Second Amended Complaint as true, Plaintiff has stated a viable claim for tortious interference.

Under Texas law, the elements of this claim are: (1) a reasonable probability of entering into a business relationship; (2) intentional interference by the defendant; (3) independently tortious or unlawful conduct; (4) proximate causation; and (5) actual damages. *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013); *Wal-Mart Stores, Inc. v. Sturges*, 52 S.W.3d 711, 726 (Tex. 2001). In *Sturges*, the Texas Supreme Court clarified that liability cannot rest on "mere unfairness" or competition, but requires conduct that is "independently tortious or unlawful." Id. at 726–27. The Court explained that actionable conduct includes "fraudulent statements, threats of physical harm, or illegal boycotts," but not simply aggressive competition. Id. at 726–28. Plaintiff has alleged each element, including independently tortious conduct.

**i.**     **Reasonable Probability of a Business Relationship**

Plaintiff's SAC alleges that the July 19, 2023, meeting at Topgolf was a prearranged professional lunch with a prospective client, scheduled specifically to discuss retaining legal services. (SAC ¶ 65). The planned and formal nature of the meeting, including prior communications and the expressed purpose of engaging Plaintiff's services, demonstrates more than a mere hope of future dealings; it alleges a concrete business opportunity that was reasonably probable to materialize. (SAC ¶ 66).

17

### ii.    Intentional Interference

The SAC alleges that Jane Doe abruptly interrupted the meeting, publicly demanded Plaintiff's credit card, and threatened removal if he did not comply, all in the presence of Plaintiff's prospective client. (SAC ¶¶ 67–68). Such conduct foreseeably disrupted the business meeting and undermined Plaintiff's credibility. At the pleading stage, these allegations permit the inference that Defendants either consciously desired to, or were substantially certain they would, interfere with Plaintiff's professional relationship. (SAC ¶ 69); see Coinmach, 417 S.W.3d at 923.

### iii.    Independently Tortious or Unlawful Conduct

Plaintiff alleges that Defendants' actions violated both Title III of the ADA and 42 U.S.C. § 1981. (SAC ¶ 71). Either statutory violation qualifies as "independently tortious or unlawful conduct" within the meaning of Texas law. Sturges, 52 S.W.3d at 726 (defining "independently tortious" as conduct that would be actionable under a recognized legal theory). At this stage, Plaintiff's allegations of discrimination must be accepted as true, making dismissal inappropriate.

### iv.    Proximate Causation

The SAC alleges that Plaintiff's client, after witnessing the discriminatory and humiliating treatment, lost confidence in Plaintiff's trustworthiness, abandoned the meeting, and declined further engagement. (SAC ¶ 70). This sequence plausibly pleads proximate cause. Texas law does not require Plaintiff to prove certainty of contract at the pleading stage; a "reasonable probability" is sufficient. Coinmach Corp. v. Aspenwood Apartment Corp., 417 S.W.3d 909, 923 (Tex. 2013). The SAC further alleges that the meeting was pre-arranged for the purpose of retaining legal services (SAC ¶¶ 65–66), and that the prospective client immediately terminated the engagement after witnessing the discriminatory conduct (SAC ¶ 70). These allegations plausibly establish both

18

a probable business relationship and proximate causation. See Bradford v. Vento, 48 S.W.3d 749, 757 (Tex. 2001). Defendants' attempt to shift blame to Plaintiff for objecting improperly asks the Court to draw inferences against the non-movant, which is impermissible under Rule 12(b)(6).

### v.    Damages

Plaintiff alleges loss of a valuable business opportunity, reputational injury, and economic harm as a direct result of Defendants' conduct. (SAC ¶ 72). These allegations satisfy the damages requirement under Texas law. Taken together with Plaintiff's allegations of a probable business relationship (SAC ¶¶ 65–66), intentional interference (SAC ¶¶ 67–69), and proximate causation (SAC ¶ 70), the SAC states a plausible claim for tortious interference. Defendants' arguments rest on factual disputes, such as whether the credit-card policy was uniformly applied or whether Plaintiff's prospective relationship was "probable", that cannot be resolved at the pleadings stage. See Coinmach Corp. v. Aspenwood Apartment Corp., 417 S.W.3d 909, 923 (Tex. 2013). Accordingly, the motion to dismiss Count IV should be denied.

### IV.    CONCLUSION AND PRAYER FOR RELIEF

For all the reasons set forth above, Plaintiff has sufficiently alleged both a concrete, particularized injury and a real and immediate threat of future harm resulting from Defendants' discriminatory enforcement of their "Storing a Credit Card" policy. Plaintiff's allegations are specific, plausible, and legally sufficient to establish standing under Title III of the ADA at this stage of the litigation. Contrary to Defendants' assertions, Plaintiff's intent to return to the Fort Worth Topgolf location is not speculative, and his request for injunctive relief is fully consistent with the statutory remedies available under 42 U.S.C. § 12188(a)(1).

Because the issues raised in Defendants' motion to dismiss involve disputed facts that must be resolved through discovery, not on the pleadings, and because Plaintiff has more than met the

19

threshold to proceed with his claims under Rule 12(b)(1) and 12(b)(6), the motion should be denied in full.

WHEREFORE, Plaintiff respectfully requests that the Court: (a) Deny Defendants' Motion to Dismiss Counts I–IV of the Second Amended Complaint; (b) Permit Plaintiff's ADA, §1981, and tortious interference claims to proceed to discovery on the merits; and (c) Grant such other and further relief as the Court deems just and proper.

Dated September 23, 2025.

Respectfully submitted,

*/s/ Oscar Morgan III*

_____
Oscar Morgan III, Pro Se
6061 Brandon Run
Lakewood, FL 34211
205-266-0079
oscaratlaw@aol.com

**CERTIFICATE OF SERVICE**

I certify that on September 23, 2025, I filed the foregoing via the Court's CM/ECF system, which will send notice to all counsel of record.

Service to (via CM/ECF):
John B. Brown
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
8117 Preston Road, Suite 500
Dallas, Texas 75225
john.brown@ogletree.com

Shayna E. Dickman
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
8117 Preston Road, Suite 500
Dallas, Texas 75225
shayna.dickman@ogletree.com
Attorneys for Defendants

/s/ Oscar Morgan III
Oscar Morgan III
Pro Se Plaintiff

21