IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| OSCAR MORGAN, III | § |
| | § |
| V. | § CIVIL ACTION NO. 4:25-CV-206-P |
| | § |
| TOPGOLF INTERNATIONAL, INC., ET AL. | § |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION REGARDING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**

Pending before the Court is Defendants TopGolf International, Inc., Top Golf USA, Inc., TopGolf USA Ft. Worth, LLC (hereinafter referred to as "the TopGolf Defendants") and Jane Doe (collectively referred to as "Defendants") Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion to Dismiss") [doc. 22], filed September 2, 2025.  Having carefully considered the motion, response, reply, and applicable law, the Court **RECOMMENDS** that Defendants' motion be **PARTIALLY GRANTED and PARTIALLY DENIED**.

## I.   FACTUAL BACKGROUND

On March 4, 2025, *pro se* Plaintiff Oscar Morgan, III ("Morgan"), who holds himself out to be an attorney licensed in Florida,[1] filed a Complaint [doc. 1] against Defendants.  Defendants filed a motion to dismiss [doc. 6] on May 6, 2025.  Consequently, on May 27, 2025, Plaintiff filed an Amended Complaint [doc. 9].  Subsequently, on August 19, 2025, Plaintiff filed a Second Amended Complaint [doc. 20], which is the current live pleading before the Court.  In the Second Amended Complaint, Plaintiff alleges the following: (1) claims pursuant to Title III of the Americans with Disabilities Act ("ADA") against the TopGolf Defendants for public accommodation discrimination and, alternatively,

---

[1] *See* Plaintiff's Second Amended Complaint at Exhibit 1, p. 1 (Letter dated November 20, 2024, from Plaintiff to TopGolf on letterhead titled "MORGAN LAW OFFICE, OSCAR MORGAN, III, ATTORNEY AT LAW.")

1

for vicarious liability for Jane Doe's discriminatory conduct;[2] (2) a claim for racial discrimination in violation of 42 U.S.C. § 1981 in the making and enforcement of contracts against the TopGolf Defendants; and (3) a claim against all Defendants for tortious interference with a prospective business relationship. (Plaintiff's Second Amended Complaint ("Pl.'s Sec. Am. Compl.") at 8-14.)

In its Motion to Dismiss, Defendants argue that all of Plaintiff's claims against them should be dismissed because: (1) the Court does not have subject-matter jurisdiction to hear Plaintiff's ADA claims because Plaintiff "does not (and cannot) show that there is a 'real or immediate threat' of future harm based on his one-time experience at Topgolf;" (2) Plaintiff has failed to state a claim under the ADA because Plaintiff fails to "assert any facts to support his conclusion that Defendants regarded him as disabled or that Defendants applied Topgolf's policies to him *because of a disability*;" and (3) Plaintiff "fails to state facts showing that he can meet the elements of a race discrimination claims under § 1981 or a claim for tortious interference with a business expectancy claim." (Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Defs.' Mot. to Dismiss") at 3, 8-18.)

## II.    LEGAL STANDARD AND ANALYSIS

Rule 12(b)(6) authorizes the dismissal of a complaint that fails "to state a claim upon which relief can be granted."  This rule must be interpreted in conjunction with Rule 8(a), which sets forth the requirements for pleading a claim for relief in federal court.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Rule 8(a) calls for "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see also Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 513 (2002) (holding that Rule 8(a)'s simplified pleading standard applies to most civil actions). The Court must accept as true all well-pleaded, non-conclusory allegations in the complaint and liberally

---

[22] *See* 42 U.S.C. § 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.")

2

construe the complaint in favor of the plaintiff. *See Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir. 1982).

The plaintiff must, however, plead specific facts, not mere conclusory allegations, to avoid dismissal. *See Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992). Indeed, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). The Court need not credit bare conclusory allegations or "a formulaic recitation of the elements of a cause of action." *Id.* Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). "Generally, a court ruling on a motion to dismiss may rely on only the complaint and its proper attachments. A court is permitted, however, to rely on documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted).

A.   **Claims under Title III of the ADA**

1.   **Standing**

As to Plaintiff's claims under Title III of the ADA, Defendants state that the only remedies available to private persons under Title III are limited to injunctive relief and attorneys' fees.[3] (Defs.' Mot. to Dismiss at 8.) According to Defendants, because standing for injunctive relief requires a threat of present or future harm to the Plaintiff, Plaintiff lacks standing here because "Plaintiff does not allege that a threat of present or future harm exists." (*Id*. at 9.) In support, Defendants state:

> Plaintiff alleges that, on one of his many visits to TopGolf, a server asked him to provide his credit card as a condition of continued service, even though Plaintiff did not personally observe the server making this same request of other patrons. Plaintiff acknowledges that Topgolf's policies require employees to store at least one credit card for each table. Plaintiff further acknowledges that Topgolf's policies require managers to perform audits throughout the shift for each employee to ensure that employees are storing credit card, in accordance with Topgolf's policy. Even assuming the truth of Plaintiff's assertion that his server did not ask other patrons for their credit cards, Plaintiff has not alleged that one server's failure to comply with Topgolf's Storing a Credit Card policy on one occasion (at a time when the facility was "crowded" with patrons) gives rise to a "real or immediate threat" of future harm. Although Plaintiff has amended his complaint to allege that he intends to return to the Topgolf facility in Fort Worth, Texas, he cannot plead any facts establishing that there are continuing, adverse effects as a result of Defendants' actions. Accordingly, Plaintiff lacks standing to pursue a claim for injunctive relief under Title III of the ADA, and his claims must be dismissed for lack of subject-matter jurisdiction.

(Defs.' Mot. to Dismiss as 9-10 (footnotes omitted) (internal citations omitted).)

"Title III of the ADA authorizes plaintiffs to seek injunctive relief against places of public accommodation operated by private entities." *Smith v. Bd. of Comm'rs of La. Stadium and Exposition Dist.*, 371 F. Supp. 3d 313, 321 (E.D. La. Mar. 6, 2019) (citing 42 U.S.C. § 12188 (incorporating into Title III of the ADA the remedial scheme of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a-3, which permits only actions for injunctive relief)). To establish standing, a plaintiff must allege: (1)

---

[3] However, according to Defendants, "*pro se* litigants are not entitled to attorneys' fees or litigation expenses pursuant to 42 U.S.C. § 12205." (*Id*. at 8.)

an injury in fact; (2) a causal connection between the injury and the conduct complaint of; and (3) a likelihood that the injury will be addressed by a favorable decision. *Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992). "A plaintiff seeking injunctive relief, unlike a plaintiff seeking damages, must establish more than the existence of a past wrong to satisfy the injury-in-fact requirement." *Singleton v. Cannizzaro*, No. 17-10721, 2020 WL 3047453, at *3 (E.D. La. June 8, 2020) (internal quotation marks and citations omitted). While "the Supreme Court has not addressed the injury-in-fact requirement under" Title III of the ADA, courts in this circuit rely on *Frame v. City of Arlington*, 657 F.3d 215, 235-36 nn.100-03 (5th Cir. 2011), in analyzing whether a Plaintiff has standing to seek injunctive relief under Title III of the ADA. *Smith*, 371 F. Supp. 3d at 321-22. "In light of *Frame*, district courts in the Fifth Circuit have generally adopted the 'deterrent effect' test in Title III cases under the ADA." *Id.* at 323.[4] "Under the 'deterrent effect' test, plaintiffs need only show that they were deterred from accessing a public accommodation to show standing." *Badalementi v. La. Dep't of Wildlife and Fisheries*, No. 19-10849, 2021 WL 4742930, at *2 (E.D. La. Oct. 12, 2021); *see George v. Hobby Lobby Stores, Inc.*, 769 F. Supp. 3d 537, 545-46 (E.D. La. 2025) (finding that Plaintiff had standing to state a Title III ADA claim as Plaintiff had a disability, Defendant was a place of public accommodation, Plaintiff had alleged that Defendant discriminated against him because of his intellectual disability, and Plaintiff had "alleged that he would return to [Defendant's] store if he could."); *Smith*, 372 F. Supp. 3d at 323-24 (holding that

---

[4] *But see X.D. by De Leon v. Totally Kids Learning Ctr.*, No. 1:24-cv-051, 2024 WL 4093215, at *3 (S.D. Tex. Aug. 12, 2024) ("In the context of disability discrimination claims, courts in the Fifth Circuit and elsewhere have applied different theories to determine if the plaintiff has standing[,the intent-to return theory and the deterrent-effect doctrine,] and there does not appear to be an established, definitive approach.") (internal quotation marks and citations omitted). The Court notes that, even under the "intent to return" test, Plaintiff has standing to seek injunctive relief under Title III of the ADA as Plaintiff alleges that he "genuinely desires and intends to return to the Topgolf facility in Fort Worth, Texas" (Pl.'s Sec. Am. Compl. at 7). *See Smith*, 371 F. Supp. 3d. at 321-25.

the plaintiff had standing where she had testified that the alleged disability discrimination at issue deterred her from attending future events at the defendants' event venue).[5]

In the Second Amended Complaint, Plaintiff alleges:

> 35.     Plaintiff genuinely desires and intends to return to the Topgolf facility in Fort Worth, Texas to enjoy its goods and services on an equal basis with non-disabled patrons.  However, the discriminatory treatment he experienced, combined with the facility's failure to reasonably accommodate his apparent disability, has deterred him from returning.  Absent relief from this Court, Plaintiff faces a real and immediate threat of continued discrimination if he returns to the facility[.]
>
> 36.     Plaintiff frequently travels to Texas and other states where Topgolf operates facilities, and he intends to return to the Fort Worth location in the future.  However, Plaintiff remains deterred from patronizing the Fort Worth facility because Defendants have not addressed or corrected the discriminatory practices, creating a continuing and imminent threat of unequal treatment.

(Pl.'s Sec. Am. Compl. at 7.)  Based on these allegations, the Court **FINDS and CONCLUDES** that Plaintiff has standing to pursue his claims under Title III of the ADA.  Thus, the Court **RECOMMENDS** that Defendants' Motion to Dismiss on this issue be **DENIED**.

### 2.     Failure to State a Claim

As set forth above, Defendants also argue that Plaintiff has failed to state a claim under Title III of the ADA.  (Defs.' Mot. to Dismiss at 3, 10-12.)  Specifically, Defendants claim that Plaintiff fails to allege that "he was discriminated against by reason of his disability." (*Id*. at 10.)  In support, Defendants state:

> Plaintiff's Complaint is devoid of any particular showing that he was denied an opportunity to seek services, purchase goods, or otherwise utilize Topgolf *due to his alleged disability*. . . .  Plaintiff does not allege that he was unable to access Topgolf's facilities because of his alleged "restricted gait" or "limited range of motion," nor does he allege that Ms. Doe was even *aware* of his alleged disability.  Moreover, Plaintiff does not allege that he was denied an opportunity to seek services or purchase goods from

---

[5] *See also Van Winkle v. Pinecroft Ctr., L.P.*, No. H-16-2694, 2017 WL 3648477, at *10 (S.D. Tex. Aug. 23, 2017) ("'Because the statute does not authorize an award of damages to a prevailing plaintiff, but only equitable relief and an award of attorneys' fees, concerns about abusive litigation by plaintiffs' lawyers must be balanced against widespread noncompliance with the ADA and inadequate enforcement of civil rights of individuals with disabilities.'") (quoting *Gilkerson v. Chasewood Bank*, 1 F. Supp. 3d 570, 576 (S.D. Tex. 2014).

> Topgolf on the day in question in his Complaint. . . . The only allegedly discriminatory conduct identified by Plaintiff was Ms. Doe's request for Plaintiff's credit card (which was made *after* Plaintiff and his client placed their food orders) and Ms. Doe's subsequent statement that Plaintiff would have to leave the premises if he refused. Thus, at most, the Complaint alleges that a Topgolf employee told Plaintiff that he would have to leave the establishment if he refused to pay for his and his client's meals, ***not because of his alleged disability***. Asking a patron to leave a place of business when the patron does not have money to purchase goods is not sufficient to assert a Title III discrimination claim under the ADA.

(Defs.' Mot. to Dismiss at 11-12) (emphasis in original) (footnotes omitted) (internal citations omitted).

"[T]o state a claim under Title III of the ADA, a plaintiff must plead: (1) that he has a disability; (2) that the place the defendant owns, leases, or operates is a place of public accommodation; and (3) that he was denied full and equal enjoyment because of his disability." *George*, 769 F. Supp. 3d at 545. In this case, Plaintiff has alleged, as relevant here, the following:

> 12. Plaintiff is a disabled U.S. Army veteran who sustained traumatic injuries during his military service. His disabilities substantially limit his ability to walk, stand, and bend. These limitations are readily apparent to others, including Defendants' employees, because Plaintiff demonstrates restricted gait, limited range of motion, and visible mobility impairment. Plaintiff also experience service-connected PTSD symptoms.
>
> . . . .
>
> 15. The Topgolf Fort Worth facility is a place of public accommodation within the meaning of 42 U.S.C. § 12181(7), as it is a place of recreation and restaurant service open to the general public.
>
> 16. Plaintiff arrived at approximately 11:15 a.m., interacted with Topgolf staff, and waited for his client as the facility began to fill during the lunch hour.
>
> 17. Plaintiff selected an available booth and was approached by Jane Doe, an employee of Topgolf USA Ft. Worth, LLC, who took his drink order.
>
> . . . .
>
> 19. When Jane Doe returned with plaintiff's drink, he placed a food order consisting of a burger and fries. Shortly thereafter, the client arrived and ordered a salad.

>   20.    As Plaintiff and his client began discussing legal matters related to her business, Jane Doe abruptly returned to the table and demanded that Plaintiff surrender his credit card as a condition for continuing service.
>
>   21.    Surprised by this demand, Plaintiff inquired whether this was a standard policy of Topgolf for non-alcoholic lunch service.
>
>   22.    There was no signage, notice, or advance disclosure indicating that customers were required to pre-authorize payment or surrender a credit card before receiving food service.
>
>   23.    Jane Doe did not identify any written or posted policy. Instead, she repeated her demand, instructing Plaintiff that he must either surrender his credit card or leave the premises.
>
>   24.    Plaintiff observed that similarly situated Caucasian patrons at nearby tables, who were also consuming food and beverages, were not subjected to the same requirement, reinforcing his belief that the demand was applied selectively and in a discriminatory manner. Plaintiff observed those patrons were being served food and beverages without prepayment or surrender of a credit card.
>
>   . . . .
>
>   50.    No similarly situated non-disabled patrons in the same facility were required to surrender a credit card under comparable circumstances.
>
>   . . . .
>
>   52.    The selective enforcement of this alleged "policy" was arbitrary, lacked legitimate justification, and was rooted in Jane Doe's perception of Plaintiff's disability and was applied in a manner resulting in the denial of the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of a place of public accommodation.

(Pl.'s Sec. Am. Compl. at 4-5, 10.) Thus, in accordance with the elements set forth above, Plaintiff has alleged: (1) that he has a qualifying disability that was readily apparent to others, including the TopGolf Defendants' employees; (2) that he is being denied the benefits of services at Top Golf USA Ft. Worth, which is a place of public accommodation and for which the TopGolf Defendants are responsible; and (3) that such discrimination is by reason of his disability as other non-disabled patrons were treated differently. *See* George, 769 F. Supp. 3d at 545. As a result, contrary to Defendants' assertions, the

8

Court **FINDS and CONCLUDES** that, at this stage of the proceedings, Plaintiff has sufficiently alleged enough non-conclusory facts regarding his claims under Title III of the ADA to survive a Rule 12(b)(6) motion to dismiss. Consequently, the Court **RECOMMENDS** that Defendants' Motion to Dismiss on this issue be **DENIED**.

      **B.**      **Claim for Race Discrimination under 42 U.S.C. § 1981**

In their motion to dismiss, Defendants also argue that Plaintiff has failed to state a claim under 42 U.S.C. § 1981. (Defs.' Mot. to Dismiss 3, 12-15.) Specifically, Defendants claim that (1) "Plaintiff has not adequately pled an intent to discriminate on the basis of race" and (2) "Plaintiff's allegation that Topgolf somehow ratified his allegedly discriminatory treatment is equally unavailing." (*Id.* at 13-14.)

"To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements: (1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute[,]" which, in this case, is the making and enforcement of a contract.[6] *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994); *see Morris v. Dillard Dept. Stores, Inc.*, 277 F.3d 743, 751 (5th Cir. 2001). In his Second Amended Complaint, Plaintiff alleges, in accordance with the elements set forth above, that: (1) he is a "Black U.S. Army veteran;" (2) he "was subjected to a discriminatory condition not imposed upon similarly situated non-Black patrons in the same vicinity, namely, the requirement that he surrender a credit card before being served" while "[n]on-Black patrons were allowed to order and consume food without providing a credit card in advance;" and (3) the discrimination interfered with his "intent to form a contractual relationship by purchasing food and beverages during a business lunch." (Pl.'s Sec. Am. Compl. at 12.)

---

[6] *See* Pl.'s Sec. Am. Compl. at 11-13.

9

Based on these allegations, the Court **FINDS and CONCLUDES** that, at this stage of the proceedings, Plaintiff has sufficiently alleged enough non-conclusory facts regarding his claim under section 1981 to survive a Rule 12(b)(6) motion to dismiss.  *Cf. Moore v. Horseshoe Casino*, No. 1:15CV471, 2015 WL 4743804, at *4 (N.D. Ohio Aug. 11, 2015) ("In the absence of any allegation suggesting Plaintiff was denied the opportunity to purchase food or drink or to gamble, or was ejected from the Casino before he could avail himself of those services, he failed to establish that he sought to make or enforce a contract for services ordinarily provided by the Defendant . . . .")  Thus, the Court **RECOMMENDS** that Defendants' motion to dismiss on this issue be **DENIED**.

### C.  Claim for Tortious Interference with Prospective Business Relationship

Defendants further argue that Plaintiff's claims for tortious interference with a prospective business relationship should be dismissed because "Plaintiff has not alleged facts demonstrating that Ms. Doe had a conscious desire to prevent Plaintiff from forming a relationship with a prospective client." (Defs.' Mot. to Dismiss at 16.)  In addition, Defendants claims, *inter alia*, that "Plaintiff fails to allege that Ms. Doe's conduct was independently tortious or unlawful" or that it "was the proximate cause of his alleged injuries." (*Id*. at 16-17.)

"To prove a cause of action for tortious interference with prospective contractual relations under Texas law, a plaintiff must establish the following elements: (1) a reasonable probability that the parties[7] would have entered into a business relationship; (2) an independently tortious or unlawful act performed by the defendant that prevented the relationship from occurring; (3) the defendant's conscious desire to prevent the relationship from occurring or with knowledge that the interference was certain or substantially likely to occur as a result of its conduct; and (4) actual harm or damages suffered by the

---

[7] The "parties" refers to Plaintiff and the prospective party, which, in this case, is Plaintiff's client that Plaintiff was having a business lunch with.  *See Centuria, Inc. v. Regiment Sec., LLC*, No. 3:11-CV-2500-N, 2012 WL 13019676, at *2 (N.D. Tex. Mar. 21, 2012).

10

plaintiff as a result of the defendant's interference." *L-3 Comm'ns Integrated Sys., L.P. v. Lockheed Martin Corp.*, No. 3:07-CV-0341-B, 2008 WL 4391020, at *11 (N.D. Tex. Sept. 29, 2008) (footnote added). As to element three, Plaintiff must allege facts showing that "defendants knew about the contract or business relationship and intentionally interfered with the contract." *Ceramic Perf. Worldwide, LLC v. Motor Works, LLC*, No. 3-09-CV-0344-BD, 2010 WL 234804, at *3 (N.D. Tex. Jan. 21, 2010).

Plaintiff, in his Second Amended Complaint, alleges, *inter alia*, that "Jane Doe and the Topgolf Defendants knew, or were substantially certain, that imposing such humiliating and discriminatory treatment [of demanding that Plaintiff surrender his credit card as a condition for continuing service] upon Plaintiff during a professional meeting would disrupt Plaintiff's business relationship and undermine his professional credibility." (Pl.'s Sec. Am. Compl. at 14.) While Plaintiff makes this conclusory allegation, Plaintiff fails to allege any non-conclusory facts that support such allegation.[8] Consequently, the Court **FINDS and CONCLUDES** that Plaintiff has failed to state a claim for tortious interference with a business relationship. Thus, the Court **RECOMMENDS** that this claim be **DISMISSED**.

---

[8] For instance, to support such an allegation Plaintiff needed to allege specific facts, such as that he had informed Doe (or any other employees of the TopGolf Defendants) about his client and the purpose and/or importance of this lunch and Doe acted with knowledge of this information.

**RECOMMENDATION**

For the reasons set out above, the Court **RECOMMENDS** that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint ("Motion to Dismiss") [doc. 22] be **PARTIALLY GRANTED as to Plaintiff's claim for tortious interference with a prospective business relationship and PARTIALLY DENIED as to Plaintiff's claims under the ADA and 42 U.S.C. § 1981**.

**NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections to 14 days).

**ORDER**

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **November 12, 2025,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed, and the opposing

12

party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

    SIGNED October 29, 2025.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE